**UNITED STATES of America,**

v.

**Robert Clinton MORRIS.**

**No. 301CR–096–X.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 17, 2001.

Candina Sharon Heath, U.S. Attorney's Office, Department of Justice, Dallas, TX, for plaintiff.

Jack B. Zimmermann, Zimmermann & Lavine, Houston, TX, for defendant.

## ORDER ON DEFENDANT'S MOTION TO SEVER AND TRANSFER

KENDALL, District Judge.

Before the Court is: Defendant Morris' Motion to Sever Defendants, filed September 21, 2001; Defendant Morris' Motion to Transfer Case for Trial, filed September 21, 2001; Government's Response to Morris's Motion to Sever, filed October 29, 2001; and Government's Response to Morris's Motion to Transfer, filed October 29, 2001. After considering the motions, the responses, the evidence, and counsel's arguments at the October 29, 2001 hearing, the Court hereby **GRANTS** Defendant's Motion to Sever. The Court also **GRANTS** Defendant's Motion to Transfer and **ORDERS** this case be transferred to the Middle District of Georgia, Columbus Division. The reasons for the Court's decision are set forth below.

## I. Background

On March 21, 2001, a federal grand jury in the Northern District of Texas returned a two count indictment charging Lt. Colonel Robert Clinton Morris ("Morris") and six other individuals with conspiring to steal and convert government property in violation of 18 U.S.C. §§ 371 and 641. Only two people were named in Count 2 of the indictment, Lt. Col. Morris and Joseph Gabe Trujillo ("Trujillo"). Lt. Col. Morris was not named in Count 1 of the indictment.

Count 2 of the indictment is a different conspiracy allegation from the one alleged in Count 1 of the indictment. The Morris–Trujillo conspiracy took place first, during the fall and winter of 1997 and the spring of 1998. Allegedly, Morris and Trujillo, along with other unnamed and unindicted co-conspirators, entered into written and verbal agreements to convert approximately $7,000,000 of U.S. Army excess medical equipment located in Albany, Georgia. Specifically, Lt. Col. Morris is accused of using his position to requisition the excess medical property for the 11th Infantry Regiment at Fort Benning, Georgia by using the 11th Infantry Regiment's Department of Defense Activity Code. Allegedly, Morris took excess property and sought to distribute it to Indian Health Services ("IHS") and a not-for-profit humanitarian organization.[1] As part of the alleged conspiracy, Trujillo arranged for IHS funds to be used to transport part of excess property from Albany, Georgia to Columbus, Georgia (specifically to Fort Benning). The remainder of the excess property was to be transported to the Federal Supply Warehouse, a government facility located in Fort Worth, Texas.

## II. Motion to Sever

Morris filed a Motion to Sever Count 2 of the conspiracy arguing that there is a misjoinder under FEDERAL RULE OF CRIMINAL PROCEDURE 8. The thrust of Morris's written and oral argument is that the crimes, as alleged in the indictment, constitute separate and distinct conspiracies. The Court agrees with Morris and grants his motion to sever.

### A. Motion to Sever Standard

Rule 8 of the Federal Rules of Criminal Procedure allows the joinder of two or-more defendants if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The rule goes on to provide that the "defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." FED. R. CRIM. P. 8. Rule 14 of the FEDERAL RULES OF CRIMINAL PROCEDURE provides the relief from a prejudicial joinder. Specifically, "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." FED. R. CRIM. P. 14.

 Whether joinder is proper is normally determined from the allegations in the indictment. *See United States v. Faulkner*, 17 F.3d 745, 758 (5th Cir.1994). The proprietary of Rule 8 joinder is determined by the initial allegations of the indictment, which, barring arguments of prosecutorial misconduct are accepted as

---

**1.** Partners International, Inc. is a not-for-profit organization that donates items that are

out of date to needy third-world countries.

true. *See United States v. Kaufman,* 858 F.2d 994, 1003 (5th Cir.1988); *United States v. Harrelson,* 754 F.2d 1153, 1176 (5th Cir.1985). Joinder of defendants is proper under Rule 8 where the record, examined broadly, presents two conspiracies substantially interrelated by their facts and participants rather than two separate and distinct conspiracies. *See United States v. Toro,* 840 F.2d 1221, 1238 (5th Cir.1988). In the Fifth Circuit, proper joinder requires that the offenses charged "must be shown to be part of a single plan or scheme," and that "[p]roof of such a common scheme is typically supplied by an overarching conspiracy from which stems each of the substantive counts." *United States v. Lane,* 735 F.2d 799, 805 (5th Cir.1984), *rev'd in part on other grounds,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Under Rule 8, a "series" is something more than "similar" acts. *See United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir.1975).

### B. Analysis

■ Morris argues that the two crimes alleged in Counts 1 and 2 are two separate conspiracies, and that Trujillo represents the only link between the two counts in the indictment. The differences between Counts 1 and 2 are apparent from the face of the indictment. The two conspiracies have two different timelines and involved, with the lone exception of Trujillo, entirely different defendants. The Court agrees with Morris's assertion that Count 1 is "common theft" whereas Count 2 involves the improper use of government procedures in seeking to requisition excess property. There is no "overreaching conspiracy" nor is there a "substantial identity of facts or participants." The presence of Trujillo is not enough to support the Government's assertion that there is an overreaching conspiracy that would be sufficient to link the two counts alleged in the indictment as one conspiracy. Because

Rule 8 has not been satisfied, the Court is of the opinion that severance of the counts is appropriate.

### III. Motion to Transfer

Morris has also filed a Motion to Transfer the case to the Middle District of Georgia, Columbus Division, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. The thrust of Morris's argument is that the Rule 21(b) and the standards addressed by the Supreme Court in *Platt v. Minnesota Min. & Mfg. Co.,* 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), favor transferring this case. The Court agrees with Morris and grants his motion to transfer.

### A. Motion to Transfer Standard

The United States Constitution provides that "[t]he Trial of all Crimes, ..., shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed." U.S. CONST. Art. III, § 2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ..." U.S. CONST. amend. VI. Rule 21(b) of the FEDERAL RULES OF CRIMINAL PROCEDURE states that "[f]or the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district."

■ The Supreme Court has identified ten factors that a court should consider when ruling on a Rule 21(b) motion. *See Platt,* 376 U.S. at 243–44, 84 S.Ct. 769. These factors are: "(1) the residence of an individual defendant; (2) the location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved;

(5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer."
*Id.*

### B. Analysis

■ Based on the allegations contained in the indictment and the evidence adduced at the hearing, the Court finds that the crimes alleged to have been committed by Morris took place in Georgia. He is accused of conspiring to and taking the excess medical property in Georgia. Morris and Trujillo arranged or directed the transportation of this property from one location in Georgia to another location in Georgia. As alleged in Count 2, it was Trujillo, not Morris, who directed a portion of the excess property to be transported to Texas. This appears to be the only nexus between the alleged offense in Count 2 and Texas. Thus, the Court is of the opinion that the crime alleged against Morris took place almost exclusively in Georgia.

Additionally, Morris contends that the *Platt* factors weigh in favor of transfer. The Court agrees. Some of the factors are neutral. For example, the disruption to the defendant's business will be the same regardless of the location of the trial. The docket condition of each district and the relative accessibility of a place of trial are also neutral. While there was no evidence of the docket condition of the Middle District of Georgia presented, this Court would certainly be able to provide Morris with the quick docket date he requests. The location of counsel is also a neutral

factor since Morris's counsel is from Houston, Texas and will have to travel regardless of where the case is tried.

The factors the Court finds weigh in favor of transfer are the location of the defendant's residence, the location of the witnesses, location of events likely to be in issue, and expense to the parties.[2] First, it is undisputed that Morris is a resident of Georgia not Texas. Thus, this factor clearly weighs in favor of transfer.[3] Second, with respect to the alleged Morris–Trujillo conspiracy, the majority of the witnesses and the location of events likely to be an issue are located in Georgia. The Government admits that a *majority* of its witnesses reside in Georgia and will have to be flown to, fed, and housed in Dallas at the Government's expense. While there is a connection to Texas in Count 2–Trujillo arranging for the excess property to be transported to the Federal Supply Warehouse in Fort Worth, Texas-all of the other acts alleged to have been committed by him and all of the acts alleged to have been committed by Morris took place in Georgia. The requisition of the excess medical property took place in Georgia. The property was transported in Georgia and most of it was stored in Georgia. Some of the medical equipment (if not all) in question is currently located in a warehouse in Fort Benning. The Government contends that contact between the two alleged co-conspirators took place in both Texas and Georgia. However, Morris testified at the hearing and the Court believes that, before the date of the hearing, he had never been to Texas. Thus, the face-to-face meetings between the alleged co-conspirators took place in Georgia and Morris was in Georgia for the other communica-

---

2. *See generally* the unobjected to proffer of testimony of Lieutenant General John M. LeMoyne, Defense Exhibit # 1 from the hearing on the Motion to Sever and Transfer, which the Court accepts as true.

3. Trujillo is a resident of New Mexico and will be required to travel regardless of whether the case is to remain in Texas or be transferred to Georgia.

tions that took place on the telephone or electronically.

The location of the witnesses also favors transferring the case to Georgia. Morris has indicated that he will be calling twenty-four witnesses as part of his defense, most of whom reside in Georgia. As noted a majority of the Government's own witnesses also reside in Georgia. Additionally, the expense to the parties weighs in favor of transfer. Lt. Col. Morris testified at the hearing, and the Court believes, he has already expended his life savings and received financial help from his elderly parents (who mortgaged their home) defending himself in this case. If the case was to remain in Texas, Morris would be required to provide the costs of transportation and housing for his twenty-four witnesses. This would involve thousands of dollars of personal expense to him. Furthermore, this may cost money this career military officer does not have.

Because of the location of Morris's residence, the location of the events alleged in the indictment, the location of the witnesses, and the expense to both sides, particularly to the Defendant, the Court holds that Rule 21(b) and the *Platt* factors favor transfer. Clearly this transfer will result in more convenience to the witnesses and the parties, will cause the case to be less expensive for *both* sides to litigate, and in the Court's opinion is certainly in the interest of justice and fundamental fairness to Lt. Col. Morris, a presumptively innocent, decorated, special forces career military officer.

## IV. Conclusion

For these reasons, the Court **GRANTS** Defendant's Motion to Sever and **GRANTS** Defendant's Motion to Transfer. This case is hereby transferred to the Middle District of Georgia, Columbus Division.

**SO ORDERED.**